IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

ONE BANK & TRUST, N.A.                                                                                   PLAINTIFF

VS.                                            4:09CV00525 BRW

THE LARRY MCNEILL IRREVOCABLE                                              DEFENDANTS
LIFE INSURANCE TRUST and LARRY R.
MCNEILL, Individually

## ORDER

Pending is Defendants' (collectively "McNeill") Motion for Relief from a Judgment (Doc. Nos. 79, 80). Plaintiff has responded,[1] and McNeill has replied.[2] For the reasons set out below, Defendant's Motion is DENIED.

## I.   BACKGROUND

Defendant Larry McNeill created the Larry McNeill Irrevocable Life Insurance Trust. On September 5, 2007, Plaintiff loaned the Trust $2,123,717.33.  James McNeill, as Trustee, signed the Promissory Note and Security Agreement.[3]  That same day, Larry McNeill assigned a $7,000,000 life insurance policy to Plaintiff as collateral for the loan.  The Trust was listed as the debtor.

Larry McNeill signed a Guaranty Agreement, which "jointly and severally absolutely and unconditionally guarantees without limitation [the Trust's] full and prompt performance" of its obligations under the loan.[4]

---

[1]Doc. Nos. 81, 82.

[2]Doc. No. 83.

[3]Doc. No. 18-3.

[4]Doc. No. 18-6.

On May 21, 2009, Plaintiff, through its lawyers, issued a notice of default informing the Trust that the "[n]ote matured on January 1, 2009, and is currently past due. The Loan is in default."[5] Plaintiff sued to collect on the loan; McNeill filed a counterclaim.[6] The parties later settled their dispute.

On August 31, 2011, McNeill accepted a settlement offer from Plaintiff that was set out in an email. The offer reads:

> In exchange for a mutual release of all known and unknown claims between the parties, their owners, employees, and agents and a dismissal with prejudice of all claims and counterclaims pending in the above action, One Bank will accept:
> (i) Certified copies of recorded quitclaim deeds dated March 11, 2009 and June 16, 2011 (provided in June, 2011 emails of Tim Cullen to John Baker) to be provided no later than September 10, 2011,
> (ii) Warranty Deeds (prepared by counsel for One Bank) from Mr. Larry McNeill of the lots the subject of the June 16, 2011 quitclaim deed to be provided no later than September 15, 2011,
> (iii) Conveyance of 500,000 of Mr. Larry McNeill's and/or the Trust's issued shares of American Polymer, Inc.,
> (iv) Larry McNeill's Rolex watch and ladies 3.33 carat diamond ring as identified in the email from Tim Cullen to John Baker and Alex Gray dated June 29, 2011, and
> (v) Entry by the Court of an unappealable consent judgment in the amount of $110,000 (bearing a post-judgment interest rate of 5.75% per annum) against both Defendants jointly and severally with all parties to bear their own attorney's fees and costs.[7]

On September 15, 2011, Plaintiff emailed McNeill a draft settlement and release agreement (the "Release"), among other things, to be signed by McNeill.[8] The Release restated the terms of settlement offer.[9]

---

[5]Doc. No. 18-7.

[6]Doc. Nos. 1, 55, 58, 61.

[7]Doc. Nos. 79, Ex. A; 81, Ex. 19.

[8]Doc. No. 81, Ex. 21.

[9]*Id*.

2

McNeill responded the next day, stating that the Release "fairly recites the terms of the settlement."[10]  McNeill referenced a conversation with Plaintiff about removing some "whereas clauses," and said he would send a version of the Release including his edits.[11]

On September 29, 2011, McNeill gave Plaintiff: the diamond ring and Rolex watch; a stock certificate for 500,000 shares of American Polymer, Inc.; the two quitclaim deeds; a warranty deed in favor of Plaintiff; and a declaration of value form, as required by the settlement offer that McNeill accepted.[12]

The next day, McNeill emailed Plaintiff a revised draft of the Release.[13]  In addition to making the changes to the "whereas clauses," McNeill added the following new term to the agreement: "No IRS Reporting.  The parties regard the settlement herein as a settlement and compromise of a disputed liability, without admission.  The Bank will not issue a Form 1099-C in these regards."[14]  McNeill also referenced a conversation about a payment plan, and asked Plaintiff to confirm that it would allow McNeill to pay the judgment over time.[15]

Between October 3 and 6, 2011, Plaintiff and McNeill exchanged emails about the 1099-C matter.  McNeill made it clear that the 1099-C issue "has become a significant hurdle"; Plaintiff made clear that it "is not in a position to negotiate with respect to legal obligations

---

[10]Doc. No. 81, Ex. 23.

[11]*Id.*

[12]Doc. No. 81, Ex. 25.

[13]Doc. No. 81, Ex. 26.

[14]*Id.*

[15]*Id.*

3

imposed upon it relative to the issue of a 1099-C.  Moreover, issuance of a 1099-C was never a term of settlement discussed or negotiated between the parties . . . ."[16]

On October 12, Plaintiff emailed McNeill a consent judgment for McNeill to sign. McNeill responded by asking if Plaintiff would "sign off on the [Release] we tendered."[17] Plaintiff responded on Monday, October 17, that it would not sign off on the revised Release because "its language is inconsistent with that agreed-upon between the parties in their settlement."[18]

Several days earlier, McNeill hand-delivered to Plaintiff the signed consent judgment, along with a copy of the Release including the no-IRS-reporting provision.  McNeill asked if Plaintiff agreed to the revised Release, and again asked for terms for paying the consent judgment.  McNeill's letter noted that "it will be October 24th before I can respond to anything of substance related to this case."[19]

 On October 17, 2011, Plaintiff submitted to the Court the signed consent judgment, which was entered on October 18, 2011.[20]

One week later, McNeill asked Plaintiff if it was "going to file a motion to make McNeill sign its version [of the Release], or wait for McNeill to file a motion to make

---

[16] Doc. No. 81, Ex. 27.

[17] Doc. No. 81, Ex. 29.

[18] Doc. No. 81, Ex. 31.

[19] Doc. No. 81, Ex. 30.

[20] Doc. No. 78.  The consent judgment did not include the terms of the settlement beyond the $110,000 monetary award.

[Plaintiff] sign?"[21] The parties continued their back and forth about the Release into November, 2011. About four months later, McNeill filed a motion under Rule 60(b)(3) of the Federal Rules of Civil Procedure for relief from the consent judgment and asks to "undo the settlement he worked so hard to achieve."[22]

## II. DISCUSSION

### A. Valid Settlement Agreement

In diversity cases such as this one, state law governs the enforceability of a settlement agreement.[23] Under Arkansas law, the essential elements of a settlement agreement include: "(1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligations."[24] Both parties must agree to the terms of the contract.[25] "The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy."[26]

Plaintiff's August 31, 2011, settlement offer was clear, and McNeill unambiguously agreed to the offer. A valid settlement agreement existed as of the time McNeill accepted Plaintiff's offer. Initially, even McNeill agreed that Plaintiff's proposed Release "fairly recites the terms of the settlement."[27] Only later did McNeill asked that a no-IRS-reporting provision be

---

[21]Doc. No. 81, Ex. 33.

[22]Doc. No. 80.

[23]*Visiting Nurse Ass'n v. VNA Healthcare, Inc.*, 347 F.3d 1052, 1053 (2003).

[24]*DaimlerChrysler Corp. v. Smelser*, 375 Ark. 216, 218-19 (2008).

[25]*Id*. at 219.

[26]*Id*.

[27]Doc. No. 81, Ex. 23.

included in the terms of the agreement. Plaintiff was under no obligation to accommodate McNeill on this point.

### B.     Rule 60(b)(3)

Under Rule 60(b)(3) of the Federal Rules of Civil Procedure, a judge "may relieve a party or its legal representative from a final judgment, or order, or proceeding for the following reasons: fraud . . . , misrepresentation, or misconduct by an opposing party."[28] McNeill's basis for alleging fraud, misrepresentation, and misconduct by Plaintiff is that Plaintiff accepted McNeill's consideration and entered the consent judgment, but did not agree to the no-IRS-reporting provision or payment terms requested by McNeill. The parties, however, had already reached an agreement on the terms of settlement before McNeill asked for either. As such, there was no fraud, misrepresentation, or misconduct and relief under Rule 60(b)(3) is unavailable.

### CONCLUSION

Based on the findings of fact and conclusions of law above, Larry McNeill's Motion for Relief from a Judgment (Doc. Nos. 79, 80) is DENIED.

IT IS SO ORDERED this 27th day of March, 2012.

/s/Billy Roy Wilson
UNITED STATES DISTRICT JUDGE

---

[28]Fed. R. Civ. P. 60(b)(3).

6